**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LORENA GARCIA, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No. 22 Civ. 1959** |
| **-against-** | |
| **W SERVICES GROUP LLC, CLEANING PATH CORP, and CINIA ORTEGA, individually,** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **Defendants.** | |

Lorena Garcia ("Plaintiff" or "Garcia"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to herself, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.   This lawsuit seeks to recover minimum wages and overtime compensation and other damages for Plaintiff and similarly situated cleaning workers (hereinafter "Cleaners") arising out of their employment with W Services Group LLC ("W Services"), Cleaning Path Corp. ("Cleaning Path"), and Cinia Ortega ("Ortega") (collectively referred to as "Defendants").

2.   As part of a common scheme, Defendants failed to pay Cleaners minimum wages for all hours worked and failed to pay overtime compensation for all hours worked in excess of 40 hours per workweek. Moreover, Defendants paid Cleaners on an untimely bi-weekly basis despite being manual workers.

3.   As a matter of economic reality, Defendants are joint employers of all Cleaners and were legally obligated to ensure their pay structure complied with the FLSA and NYLL.

4.   Based at 500 Wheeler Road, Hauppauge, New York 11788, W Services Group LLC is a

1

national facilities service provider that manages numerous projects for multisite groups across North America.[1]

5.    W Services advertises "quality services with supervised active management" providing a wide variety of commercial cleaning services, described as janitorial, floor care, exterior maintenance, specialty, and emergency response.[2]

6.    W Services also touts "[o]ur properly vetted and trained technicians provide the expected communication and results that result in low turnover, and high levels of appearance and client satisfaction. We incorporate cross training programs to [e]nsure that all technicians are fully versed in the scope of work that consistently drives improved production in your facilities."[3]

7.    W Services Group LLC utilizes "subcontractors" who work as Cleaners to provide the majority of  cleaning services at their clients' business.

8.    For instance, W Services utilized Cleaning Path to provide some of the Cleaners for their New York City clients.

9.    Cleaning Path is a Queens-based 24-hour commercial cleaning service that directly hires individuals to work as Cleaners for W Services. Cleaning Path hired Plaintiff and is the corporate entity that directly paid Plaintiff her wages.

10.  Despite this, W Services is a joint employer of Plaintiff and similarly situated Cleaners, regardless of subcontractor.

11.  For instance, W Services maintains records of work performed by Plaintiff and similarly situated Cleaners. Specifically, Plaintiff and similarly situated Cleaners are required to call an interactive voice response number provided by and managed by W Services upon their

---

[1] *See* About, W Services Website (*available at* https://www.wservices.com/about/) (last accessed March 7, 2022).
[2] *See* Cleaning, W Services Website (available at https://www.wservices.com/cleaning/) (last accessed March 7, 2022).
[3] *Id.*

arrival to a job location and after they complete a job.

12. W Services also supervises subcontracted Cleaners like Plaintiff through their traveling supervisors who inspect the premises cleaned.

13. W Services also provides detailed step-by-step "Work Order Descriptions" forms outlining how and what Cleaners are supposed to do at the job site. Cleaners are required to follow these Work Orders Descriptions and are not allowed to deviate from its instructions.

14. W Services also provides much of the cleaning materials and equipment used by Cleaners, such as cleaning chemicals that are necessary for cleaning certain job locations.

15. Plaintiff and similarly situated Cleaners also wear uniforms with a "W Services" logo, and identify themselves as W Services employees at job sites.

16. W Services' clients contact W services directly for updated scheduling of cleaning services, which is then communicated to Plaintiffs. Thus, W Services does control Plaintiff and similarly situated Cleaners' schedules.

17. As a result, W Services is an employer of Plaintiff and similarly situated Cleaners under the FLSA and NYLL regardless of subcontractor used.

18. Defendants failed to pay Plaintiff and similarly situated Cleaners no less than 1.5 times their regular rate of pay.

19. Defendants fail to pay Plaintiff and similarly situated Cleaners for travel time between job locations once their work shifts start. Likewise, Defendants fail to pay Plaintiff and similarly situated Cleaners for time spent waiting to be engaged at the job sites.

20. At all relevant times, Defendants also compensated Plaintiff and similarly situated Cleaners in New York on a bi-weekly basis.

21. Despite being manual workers, Defendants failed to properly pay Plaintiff and other

similarly situated Cleaners in New York their wages within seven calendar days after the end of the week in which these wages were earned.

22. As a result, Defendants failed to provide timely wages to Plaintiff and all other similarly situated Cleaners in New York.

23. Further, Defendants failed to provide adequate wage notices and accurate wage statements to Plaintiff and other similarly situated Cleaners.

24. Plaintiff brings this action on behalf of herself and all other similarly situated Cleaners in New York who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b).

25. Plaintiff also brings this action on behalf of herself and all other similarly situated Cleaners in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 6, §§ 190 et seq. ("NYLL"), and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiff**

**Lorena Garcia**

26. Garcia is an adult individual who is a resident of the State of New York.

27. Garcia was employed by Defendants as a Cleaner at various locations throughout New York City from approximately March 2020 to December 2021.

28. Garcia is a covered employee within the meaning of the FLSA and the NYLL.

29. A written consent form for Garcia is being filed with this Complaint.

**Defendants**

30. Defendants jointly employed Plaintiff and similarly situated Cleaners at all times relevant.

31. Each Defendant had substantial control over Plaintiff and Cleaners' working conditions, and over the unlawful policies and practices alleged herein.

32. Defendants have jointly employed Plaintiff and similarly situated employees at all times relevant.

33. During all relevant times, Defendants have applied the same employment policies, practices, and procedures to all Cleaners.

34. During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and NYLL.

**W Services Group LLC**

35. W Services Group LLC is a domestic limited liability company organized and existing under the laws of New York.

36. W Services Group LLC's service of process address is 500 Wheeler Road, Hauppauge, New York 11788

37. At all times relevant, W Services Group LLC has maintained control, oversight, and direction over Plaintiff and similar employees, including but not limited to, supervising and directing their work, keeping employment records, providing materials/equipment for Plaintiff to perform her jobs, and other employment practices that applied to her.

38. At all times relevant, W Services Group LLC applies the same employment policies, practices, and procedures to all Cleaners in its operation with respect to payment of wages.

39. Upon information and belief, at all relevant times, W Services Group LLC has had an

annual gross volume of sales in excess of $500,000.

40.  At all times relevant, W Services Group LLC has employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

41. W Services Group LLC was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

**Cleaning Path Corp.**

42. Cleaning Path Corp. is domestic business corporation organized and existing under the laws of New York.

43. Cleaning Path Corp.'s service of process address is 170-06 Crocheron Ave apt 1B Flushing NY 11358.

44. Cleaning Path Corp.'s is owned by Cinia Ortega.

45. At all times relevant, Cleaning Path Corp. has maintained control, oversight, and direction over Plaintiff and similar employees, including but not limited to, supervising and directing their work, keeping employment records, providing materials/equipment for Plaintiff to perform her jobs, and other employment practices that applied to her.

46. Plaintiff received compensation directly from Cleaning Path Corp.

47. At all times relevant, Cleaning Path Corp. applies the same employment policies, practices, and procedures to all Cleaners in its operation, including policies, practices, and procedures with respect to payment of wages.

48. Upon information and belief, at all relevant times, Cleaning Path Corp. has had an annual gross volume of sales in excess of $500,000.

49.  At all times relevant, Cleaning Path Corp. has employed more than 2 employees and

its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

50. Cleaning Path Corp. was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

**Cinia Ortega**

51. Upon information and belief, Ortega is a resident of the State of New York.

52. At all relevant times, Ortega has owned and/or operated Cleaning Path Corp.

53. At all relevant times, Ortega maintains a direct and significant management role in Cleaning Path Corp.

54. At all relevant times, Ortega has been actively involved in managing the day-to-day operations of Cleaning Path Corp.

55. At all relevant times, Ortega has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees at Cleaning Path Corp.

56. At all relevant times, Ortega has had the power to transfer the assets and/or liabilities of Cleaning Path Corp.

57. At all relevant times, Ortega has had the power to declare bankruptcy on behalf of Cleaning Path Corp.

58. At all relevant times, Ortega has had the power to enter into contracts on behalf of Cleaning Path Corp.

59. At all relevant times, Ortega has had the power to close, shut down, and/or sell Cleaning Path Corp.

60. Ortega is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

61. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

62. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

63. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Defendants' conduct business in this District and some of the events or omissions giving rise to the claims arose in this District.

## COLLECTIVE ACTION ALLEGATIONS

64. Plaintiff brings the First and Second Causes of Action, FLSA claims, on behalf of herself and all similarly situated persons who work or have worked as Cleaners at W Services Group LLC jobsites who elect to opt-in to this action (the "FLSA Collective").

65. Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and the FLSA Collective.

66. Consistent with Defendants' policies and patterns or practices, Plaintiff and the FLSA Collective were not paid the applicable minimum wage for all hours worked and were not paid proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

67. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

68. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, minimum wages for all hours worked and overtime wages for all hours worked in excess of 40 hours per workweek.

69. An employer "willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

70. According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *See* 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a plaintiff to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *See id*. (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

71. Defendants' willful violation of the FLSA is evidenced by the clear nature of the violation – it is without question illegal to not pay an employee the full minimum wage rate for all hours worked and at least 1.5 times an employee's regular rate of pay for overtime hours worked.

72. Here, as evidenced below, discovery will certainly reveal evidence that Defendants blatantly ignored the FLSA's explicit requirement that it must compensate non-exempt blue-collar workers like Plaintiff the full minimum wage rate for all hours worked and no less than 1.5 times their rates of pay for overtime hours.

73. As such, Defendants' actions constitute a willful violation of the FLSA.

## NEW YORK CLASS ACTION ALLEGATIONS

74. Plaintiff brings the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All persons who work or have worked as Cleaners on W Services Group LLC jobsites via Clean Path Corp. in New York between July 25, 2015 and the date of final judgment in this matter (the "New York Class").[4]

75. The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

76. There are more than fifty members of the New York Class.

77. Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

78. Plaintiff and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

79. Plaintiff and the New York Class have been additionally harmed by Defendants' late payments of wages. As explained by then Circuit Judge Kavanaugh, "[m]oney later is not the same as money now." *Stephens v. U.S. Airways Group, Inc.*, 644 F.3d 437, 442 (D.D.C. 2011). Here,

---

[4] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

Plaintiff and the New York Class were deprived of their ability to purchase with their timely wages, invest their timely wages, accrue interest on their timely wages, or otherwise utilize the value that their wages would have held had they been paid timely.

80. By retaining Plaintiff's and the New York Class's wages for more time than legally allowed, Defendants caused Plaintiff and the New York Class a harm with a close relationship to the torts of unjust enrichment and/or conversion.

81. Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

82. Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.

83. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

84. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual New York Class lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

85. Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

(a)  whether Defendants failed to pay Plaintiff and the New York Class minimum wages for all of the hours they worked up to 40 per week;

(b) whether Defendants correctly compensated Plaintiff and the New York Class for hours worked in excess of 40 per workweek;

(c) whether Defendants correctly compensated Plaintiff and the New York Class on a timely basis;

(d) whether Defendants failed to furnish Plaintiff and the New York Class with a proper time of hire wage notice, as required by the NYLL; and

(e) whether Defendants failed to furnish Plaintiff and the New York Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

86. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Lorena Garcia**

87. Garcia was employed by Defendants as a Cleaner at various locations throughout New York City from approximately March 2020 to December 2021.

88. Specifically, Garcia recalls working for Defendants at the following businesses on a regular basis:

(a)  Starbucks Roastery, 61 9th Avenue, New York, New York 10011

(b)  Banana Republic, 101 Liberty Street, New York, New York 10006;

(c)  Veronica Beard, 988 Madison Avenue, New York, New York 10075

(d)  Various Sephora locations, such as those located at 40 E. 14th Street, New York, New York 10003; 112 W. 34th Street, New York, New York 10001; and 1535 Broadway, New York, New York 10036.

Plaintiff also provided cleaning services to other job sites throughout Manhattan as required.

89.  During her employment, Garcia generally worked the following scheduled hours, unless she missed time for vacation, sick days, or holidays, or obtained additional shifts:

(a)  5 to 7 days per week at the Starbucks Roastery generally starting from 12:00 am to 5:00am/6:00am;[5] then

(b)  3 days per week at Veronica Beard from generally 8:00am to 11:30am or 9:00am to 12:30pm, depending if Plaintiff was assigned to another job site to clean;

(c)  1 day per week at minimum at a Sephora store location from generally 8:00pm to 11:30pm; and

(d)  1 to 2 times per month at Banana Republic from approximately 6:00am to 10:00am.

90.  In addition to these above job sites, Defendants would send Plaintiff to other job sites as needed on a weekly basis.

91. Plaintiff recalls that especially at the Starbucks job site, in the event an individual on the team of Cleaners missed work, her and her coworkers were required to stay later than usual to clean the job site.

92. As a result of the above schedule, Garcia frequently worked over 40 hours per week.

93. For the weeks in which Plaintiff worked over 40 hours per week, Defendants paid her straight time for her overtime hours.

94. Defendants failed to pay Plaintiff for all hours worked at no less than the minimum wage rate.

95.  In this regard, Defendants had a policy and practice of not compensating for travel

---

[5] For approximately the first month of Garcia's employment, her schedule was 3 days per week at the Starbucks Roastery.

time between job locations after Garcia's workday started.

96. Moreover, Defendants regularly underpaid the hours reported by Plaintiff at certain job sites. For instance, Plaintiff recalls on several occasions being told by Ortega that the time it took to clean a specific job site was excessive and Ortega paid her a lesser amount of time than actually worked.

97. Defendants also did not pay Plaintiff for time spent waiting to be engaged at job sites. For instance, Carlos (l/n/u), a W Services manager, informed Plaintiff and other Cleaners they would not be paid for time they spent waiting at a pharmacy in Brooklyn from 7:00am to approximately 5:00pm due to ongoing construction that preventing the start of cleaning services, despite being directed that they must stay there and wait.

98. Defendants at times required Plaintiff and other Cleaners to return to job sites deemed not properly cleaned. In these instances, Plaintiff did not receive payment for the additional hours re-cleaning job sites.

99. During her employment, Garcia was a non-exempt worker paid an hourly rate generally earning at the applicable minimum wage. For instance, Plaintiff's most recent rate of pay was $15.00 per hour.

100.    As a Cleaner, Garcia provided deep cleaning janitorial services at her assigned job sites.

101.    Furthermore, during her employment, over twenty-five percent of Garcia's duties were physical tasks, including but not limited to emptying out the trash, vacuuming, mopping, sweeping, dusting, and deep cleaning of services and floors.

102.    Despite regularly spending more than twenty-five percent of her shift performing these physical tasks, Garcia was compensated by Defendants on a bi-weekly basis instead of on a

weekly basis. As a result, Plaintiff was not paid the wages she was due when it was due, resulting in her underpayment.

103.    Plaintiff was similarly underpaid for every workweek that she was paid her lawfully earned wages after more than seven days within the time she completed her work.

104.    Moreover, Defendants' underpayments denied Plaintiff of the time-value of her money. Plaintiff was unable to invest, save,  purchase, or utilizing the wages she earned at the time value it held when it was due.

105.    By retaining Plaintiff's wages for more time than legally allowed, Defendants caused Plaintiff a harm with a close relationship to the tort of unjust enrichment and/or conversion.

106.    Manual Workers as contemplated by NYLL § 191 are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955). As such, the failure to provide wages owed to Plaintiff on a timely basis according to NYLL § 191 constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019).

107.    Defendants failed to accurately keep track of Garcia's hours and compensate her for all work performed.

108.    Defendants failed to provide Garcia with a proper time of hire wage notice as required by the NYLL.

109.    Throughout her employment, Defendants failed to provide Garcia with accurate wage statements with each payment of wages as required by the NYLL.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

110.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

111.    At all times relevant, Plaintiff and the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

112.    At all times relevant, Plaintiff and the FLSA Collective were or have been employees within the meaning of 29 U.S.C §§ 201 et seq.

113.    At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C §§ 201 et seq.

114.    Defendants have been required to pay directly to Plaintiff and the FLSA Collective the full minimum wage rate for all hours worked.

115.    Defendants failed to pay Plaintiff and the FLSA Collective at the applicable minimum hourly rate for all hours worked.

116.    As a result of Defendants willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

117.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

118.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of FLSA Collective.

119.    Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

120.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rates of pay for all hours worked in excess of 40 per workweek.

121.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

## THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (Brought on behalf of Plaintiff and the New York Class)

122.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

123.    The minimum wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff and the New York Class.

124.    Defendants failed to pay Plaintiff and the New York Class at the applicable

minimum hourly wage for all hours worked.

125.     Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

<b><u>FOURTH CAUSE OF ACTION</u></b><br><b>New York Labor Law – Overtime Wages</b><br><b>(Brought on behalf of Plaintiff and the New York Class)</b>

126.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

127.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff and the New York Class.

128.     Defendants failed to pay Plaintiff and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rates of pay– for all hours worked beyond 40 per workweek.

129.     Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Pay Timely Wages
### (Brought on behalf of Plaintiff and the New York Class)

130.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

131.    The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff and the New York Class.

132.    Defendants failed to pay Plaintiff and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiff and the New York Class being underpaid.

133.    Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Wage Notice
### (Brought on behalf of Plaintiff and the New York Class)

134.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

135.    Defendants have failed to supply Plaintiff and the New York Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;

overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

136.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the New York Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the New York Class)**

137.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

138.    Defendants failed to supply Plaintiffs and the New York Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

139.    Due to Defendants' violations of NYLL § 195(3), Plaintiff and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as

well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Cleaners who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiff as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

E.    Unpaid overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.    An award of monetary damages to be proven at trial for all unpaid daily/weekly overtime owed to Plaintiff and the New York Class;

G.    Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

H.    Statutory penalties of fifty dollars for each workday that Defendants failed to

provide Plaintiff and the New York Class with proper time of hire/annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

      I.     Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the New York Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

      J.     Prejudgment and post-judgment interest;

      K.     Reasonable attorneys' fees and costs of the action; and

      L.     Such other relief as this Court shall deem just and proper.

Dated: New York, New York
      March 9, 2022

                          Respectfully submitted,

                          /s/ Brian S. Schaffer

                          Brian S. Schaffer

                          **FITAPELLI & SCHAFFER, LLP**
                          Brian S. Schaffer
                          Armando A. Ortiz
                          Katherine Bonilla
                          28 Liberty Street, 30th Floor
                          New York, NY 10005
                          Telephone: (212) 300-0375

                          *Attorneys for Plaintiff and*
                          *the Putative Class and Collective*

## **FORMULARIO DE CONSENTIMIENTO DE UNIÓN**

1.     Doy mi consentimiento para ser parte demandante en una demanda contra W SERVICES COMPANY  y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.     Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

_Lorena García (Dec 10, 2021 12:07 EST)_
_____
Firma (Signature)

## Lorena García
_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))