

28 Liberty Street, 30th Floor • New York, NY 10005
Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

November 2, 2022

**VIA CM/ECF**
Hon. Barbara C. Moses, U.S.M.J.
United States District Court
Southern District of New York
Courtroom 20A
500 Pearl Street
New York, New York 10007

  Re: *Garcia v. W Services Group, et al.*, No. 22 Civ. 01959 (BM)

Dear Judge Moses,

  We represent the Plaintiff and Opt-In Plaintiffs in the above referenced matter. We write jointly with Defendants' Counsel to respectfully request approval of the Parties' settlement agreements attached as **Exhibit ("Ex.") A** (agreement with Cleaning Path Corp. and Cinia Ortega) and **Ex. B** (agreement with W Services Group LLC). The agreements resolve the claims of Lorena Garcia and five Opt-In Plaintiffs[1] (collectively "Plaintiffs") for the total amount of $75,000.00. As part of this motion, Plaintiffs request 1/3 in attorney's fees ($25,000) plus costs of $2,961.52 from the total settlement amount. For the reasons outlined below, the Court should approve the settlement as a fair and reasonable compromise of Plaintiffs' claims against Defendants.

## **BACKGROUND & PROCEDURAL HISTORY**

  Fitapelli & Schaffer, LLP ("F&S") was retained by Lorena Garcia who worked as an overnight cleaner. On March 9, 2022, Plaintiffs filed this action. *See* ECF No. 1. Ms. Garcia alleged that despite being classified as an independent contractor, she and other cleaners were in actuality employees of both W Services Group LLC and Cleaning Path Corp. and were not paid for all time worked due to travel time between job locations. Additionally, she alleged that when she did work over 40 hours per week, she would only receive straight time. Plaintiff also alleged claims for statutory penalties under the WTPA for improper wage notices and wage statements, along with late payment of wages under NYLL § 191 when she was paid on a bi-weekly basis.

  Shortly after filing this lawsuit, Plaintiff filed a pre-motion letter seeking a corrective notice due to inappropriate communications with putative class members by the Cleaning Path Defendants. *See* ECF No. 15. Likewise, W Services filed a pre-motion letter outlining their anticipated Rule 12(b)(6) Motion to Dismiss alleging it was neither Plaintiff, nor the putative class members' employer as a matter of law. *See* ECF No. 41. During this time period, the 5 opt-in plaintiffs joined the action.

  Prior to any briefing on W Services' Motion to Dismiss, the Parties agreed to attend a private mediation. Prior to mediation, the Parties engaged in informal discovery, whereby Plaintiffs received approximately 1,500 pages of payroll records and time records. F&S utilized

---

[1] The opt-in plaintiffs are Jorgina Garcia, Evodio Mendoza, Maria Madrid, Mauricio Orantes, and Lorena Guzman.

Fitapelli & Schaffer, LLP
November 2, 2022
Page 2 of 6

this production to calculate damages for Plaintiffs. F&S also received confidential financial disclosure documents from the Cleaning Path Defendants for consideration.

On August 17, 2022, the Parties attended mediation before Alfred G. Feliu, Esq. of FELIU Neutral Services. After a full day mediation, the Parties reached a settlement for $75,000.00. Of that settlement amount, W Services is paying $25,000.00 based on the apparent strength of its motion to dismiss, while the Cleaning Path Defendants are paying the remaining $50,000.00. Over the following weeks, the Parties negotiated and executed the Settlement Agreements, attached hereto as **Ex. A & B**.[2] Payment of W Service's share of the agreement will be made 30 days after approval. Cleaning Path Defendants will pay $25,000.00 30 days after court approval, and the remaining $25,000.00 120 days after approval. **Ex. B**, ¶ 2(C).

Plaintiffs' proportionate share of the net settlement fund is allocated based on their eligible individual damages, as calculated by Plaintiffs' Counsel utilizing their relevant dates of employment and approximate work schedules. *See* **Ex. A** ¶ 2(a)(i); **Ex. B** ¶ 4(a)(i). The Settlement Agreement also provides for a $2,000 service award for the Named Plaintiff. *See* **Ex. A** ¶ 2(a)(ii); **Ex. B** ¶ 4(a)(ii). A chart summarizing the overall distributions is attached as **Exhibit C**.

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *See* 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). "[T]here is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019) (Moses, J.).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the net payment

---

[2] The Agreements were fully executed on October 18, 2022, before this Court entered ECF No. 58 (Oct. 26, 2022). We respectfully submit that electronic signatures are valid under federal and state law. *See, e.g.*, *Mejias v. Vetter Works, Inc.*, No. 19 Civ. 0922, 2021 WL 8317090, at *1 (E.D.N.Y. Dec. 2, 2021) (requiring remittance of settlement funds where plaintiffs e-signed agreements and rejecting defendants' demand for ink signatures); *Pettersen v. Volcano Corp.*, No. 18 Civ. 0302, 2020 WL 6323937, at *4 (E.D.N.Y. Sept. 8, 2020) ("The New York State Electronic Signatures and Records Act . . . specifically permits both electronic and hand-written signatures[.]").

of $47,038.48 to the six Plaintiffs was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

### Factor 1: The Range of Recovery

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiffs' range of possible back wage recovery was between $0.00 and $290,151.60 – representing minimum wages ($23,597.36) and overtime wages ($36,773.89), along with liquidated damages of 100% owed wages ($60,371.26), NYLL § 191 liquidated damages ($99,655.50), WTPA Notice penalties ($30,000), WTPA wage statement penalties ($30,000), and interest ($9,753.59).[3] Therefore, the $75,000 settlement amount represents approximately 25.8% of all damages owed. However, the net amount going to Plaintiffs ($47,038.48) still represents 78% of base minimum wages and overtime wages owed.

Based on the litigation and collection risks discussed below, the total settlement of $75,000.00 is a fair and reasonable result. *See Lesser v. TIAA, FSB*, No. No. 19-CV-1707 (BCM), 2020 WL 6151317, at *2 (S.D.N.Y. Oct. 20, 2020) (Moses, J.) (finding 25% of maximum possible recovery as reasonable).

### Factors 2 & 3: Avoiding Burdens & Litigation Risk

The second and third factors also favor approval. The figure above is based upon Plaintiffs' estimated tally of weekly hours worked that were not paid. Thus, a fact finder could have eventually ruled that no extra pay was due, or that a lesser number of hours were actually compensable. As such, Plaintiffs' damages figures are not guaranteed even with a win – they could have been easily adjusted downward. Additionally, NYLL § 191 damages are being hotly litigated in federal courts, and Defendants argued that ultimately no private cause of action exists given a limited availability of appellate case law and certain lower courts that ruled no private cause of action exists. In other words, large categories of Plaintiffs' damages could be drastically reduced or eliminated entirely.

If the Parties were to continue litigation, the Parties would need to conduct full discovery, including depositions of all parties, to determine the amount and nature of claimed extra hours due. This would require further transactional costs for both sides. In addition, Plaintiffs would file their Rule 216(b) and Rule 23 Collective/Class Certification Motions, which Defendants would oppose, all of which would lead to further legal briefings. Further legal briefings on NYLL § 191 would also follow.

In addition, both sides face serious litigation risks relating to damages and liability. Upon review of records (or really lack thereof), W Services had a stronger than normal argument that it did not employ Plaintiffs. Specifically, W Services did not maintain employment records for Plaintiffs, did not pay Plaintiffs directly, supplies were provided by Cleaning Path, and at all times

---

[3] The Plaintiffs did not work for Defendant Cleaning Path prior to 2019; thus, damages were within the FLSA three-year period of time.

argued that day to day supervision of Plaintiffs were exclusively done by non-W Services employees. While Plaintiffs believe their claim against W Services would survive a motion to dismiss, these facts demonstrate that proving joint employment with W Services would be difficult, to say the least.

This case also carries with it very real and significant collection risks, especially if W Services was successful in dismissing the claims against it. As part of the mediation process, F&S received financial disclosures from Cleaning Path, including multiple years of tax returns and bank statements. Upon review of these documents, counsel is of the opinion that while Cleaning Path would be able to pay something to resolve this case, discounts were necessary given true inability to pay the full judgment and collection risks associated with potential bankruptcies. In F&S' opinion and experience, these documents demonstrate a real inability to pay a greater judgment now or in the near future. As a result, these factors greatly weigh in favor of approval. *See Felix v. Breakroom Burgers & Tacos,* No. 15 Civ. 3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (issues of collectability weighed in favor of approval where "the sincerity of parties' concern [was] demonstrated by defendants' consent to a confession of judgment" for breach of the agreement). As can be seen in **Ex. A**, the Cleaning Path Defendants are paying half of their share 30 days after approval and the second half 120 days after approval, which is secured by signed confessions of judgment.[4]

### Factors 4 & 5: Arm's Length Negotiation & Experience

The fourth and fifth factors also weigh in favor of approval. Plaintiffs' counsel and Defendants' counsel have negotiated at arm's length, as evidenced from the length of the negotiation and litigation process, and both Parties' counsel have significant experience handling wage and hour claims.

In addition, there is no evidence of fraud or collusion, as the Settlement amount represents a significant percentage of Plaintiffs' potential recovery and was obtained after an all-day mediation before an experienced wage and hour mediator. Moreover, all Plaintiffs have signed the Settlement Agreement, which specifies their individual allocations after attorneys' fees and costs, along with the sought attorneys' fees award. Plaintiffs' Counsel translated the agreements to Spanish for Plaintiffs on the telephone, and was available to answer any questions they had. Ortiz Decl. ¶ 11.

### The Court Should Approve the Allocation & the Service Award

The settlement share has been divided among the Plaintiffs based upon their underlying wages owed on a pro-rata basis. Moreover, the allocated shares were attached to the settlement agreements and each Plaintiff has signed both agreements. As such, the allocation is based upon the facts of this case and is a fair allocation of the net settlement.

---

[4] The confessions of judgment are not being submitted on ECF, but can be made available for *in camera* review if necessary.

The Court should also approve total sum of $2,00.00 in service awards to the Named Plaintiff, as this award recognizes the service she provided to the overall group of Plaintiffs in this case. Such service awards are routinely approved by Courts in this District. *See, e.g.*, *Lesser*, 2020 WL 6151317, at *4 (approving service awards to the four named plaintiffs in a multi-plaintiff FLSA action); *Velazquez v. Pizza on Stone*, No. 20 Civ. 9087, ECF No. 59 (S.D.N.Y. Dec. 28, 2021) (approving service awards to named and certain opt-in plaintiffs in multi-plaintiff FLSA action); *Barsa v. Beacon Health Options, Inc.*, No. 19 Civ. 1646, 2020 WL 7240345, at *1 (S.D.N.Y. Sept. 28. 2020) (same).

### No Red-Flag Issues Are Present In This Settlement

The red-flag issues identified in *Cheeks* are not present here. The agreement does not have a confidentiality or non-disparagement clause and the release is limited to wage and hour claims. Moreover, Cleaning Path and Cinia Ortega agreed to a neutral reference, further indicating the fairness of this overall settlement. Finally, as will be discussed below, F&S' requested attorneys' fees are not excessive. As a result, Plaintiffs respectfully request that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

### THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS

In accordance with Plaintiffs' professional services-contingency fee agreement with Plaintiffs' Counsel and the Consent to Join forms signed by Plaintiffs,[5] the Agreement provides that Plaintiffs' Counsel will recover $27,961.52, equaling one-third of the settlement ($25,000.00) plus costs ($2,961.52). The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiffs in their retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with this representation. Plaintiffs' Counsel has worked without any compensation to date, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved. Courts in this district routinely award approve attorneys' fees of one-third in FLSA cases. *See, e.g.*, *Lesser*, 2020 WL 6151317, at *3 (approving one-third of settlement and stating it "is within the range historically approved in this District"); *Deran v. Antalia Turkish Cuisine LLC*, 2020 WL 3414890, at *2 (S.D.N.Y. June 22, 2020) (Moses, J.) (approving attorney's fees of one-third of the settlement amount;

Through the date of this filing, Plaintiffs' counsel has spent approximately 115 attorney hours litigating and settling this action. These hours were compiled from contemporaneous time records maintained by each attorney participating in the case and are reasonable for a case that has required ample review of payroll information.[6] Since November 2014, all of Plaintiffs' counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. Thus, when Plaintiffs' counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm. For example, in *Rios et al. v. Louya Corp. d/b/a Jacques*

---

[5] The contingency agreement is attached to the Ortiz Declaration as **Attachment 1**. The contingency percentage is set forth is paragraphs 7 and 8.
[6] Contemporaneous time records are attached as **Attachment 2** to the Ortiz Declaration.

Fitapelli & Schaffer, LLP
November 2, 2022
Page 6 of 6

---

*Brasserie et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), Plaintiffs' counsel obtained a verdict of $1,044,512.62 after a five-day trial. However, due to the defendants' bankruptcy filings, the plaintiffs and our firm have recovered less than two percent (2%) of the damages and attorneys' fees and costs awarded to them by the court. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' counsel stood to gain nothing in the event the case was unsuccessful. Moreover, in Plaintiffs' Counsel's experience, wage and hour cases are inherently high-risk due to often unexpected closings and collection issues. Further illustrating the risks, two New York businesses that Plaintiffs' Counsel sued for wage issues have closed– Artisanal Bistro and Koi-Soho. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Even under the "lodestar" method, Plaintiffs' Counsel's one-third fee award is more than reasonable, as their requested amount is slightly less than their lodestar of $26,872.50.[7]

Lastly, Plaintiffs' counsel expended $2,961.52 in litigation costs and expenses. *See* **Ortiz Decl.** ¶ 14. These costs are primarily comprised of the expenses of having a private mediation with Alfred Feliu ($1,843.33.00) and miscellaneous expenses associated with filing, service, and federal express charges ($1,118.19). *Id.* These costs are commonly reimbursed by courts in this District. *See, e.g., Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339, 2016 WL 57119799, at *4 (S.D.N.Y. Sept. 30, 2016). As such, Plaintiff's Counsels' attorneys' fees are fair and reasonable and should be approved by the court.

\*   \*   \*

For the above reasons Plaintiffs respectfully request that the Court approve the attached Settlement Agreement.

We thank the Court for its time and consideration.

Respectfully submitted,

/s/ Armando A. Ortiz

Armando A. Ortiz

CC:   Defendants' Counsel (via ECF)

---

[7] Counsel has applied a 50% discount to the time entries of Katherine Bonilla to determine this lodestar for purposes of this cross-check. *See* **Ortiz Decl.** ¶¶ 12-13.